James E. ROBERTS, Plaintiff-Appellant,

v.

Sherwyn J. WAYNE, M.D., and St. Louis Orthopedic Institute, Inc., Defendants-Respondents.

No. 42767.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 3, 1981.

LeRoy Crouther, Jr., St. Louis, for plaintiff-appellant.

Bernard Brinker, Daniel E. Wilke, Clayton, for defendants-respondents.

DOWD, Presiding Judge.

Plaintiff, James Roberts appeals from a jury verdict in favor of defendants, Sherwyn Wayne, M.D. and St. Louis Orthopedic Institute, Inc.

In November, 1974, plaintiff fell from a ladder injuring his leg. Radiographs revealed a severely displaced intra and subtrochonteric fracture of the right femur. Plaintiff's family physician referred plaintiff to defendant, Dr. Wayne, Chief of Orthopedic Surgery at St. Joseph's Hospital, for treatment. Defendant performed surgery on plaintiff's leg the day after plaintiff's fall. Defendant testified he repositioned the fragments of plaintiff's leg then inserted a metal pin into the bone to stabilize the fragments until the leg healed. Ten days after surgery plaintiff was discharged from the hospital. He was instructed to use crutches and to return in one month for a checkup. During plaintiff's return visit in December defendant examined new radiographs of plaintiff's leg and concluded the leg was healing normally. Plaintiff returned to defendant's office again in January, 1975. Radiographs showed that the leg continued to heal normally with no complications. Plaintiff stated that during this visit defendant told him he could dispense with the crutches and begin to use a cane. Defendant also told plaintiff he could resume working if he could do so sitting down. Shortly after this visit plaintiff returned to work operating a lathe where he had been employed prior to his fall. In February plaintiff returned to defendant's office. Defendant testified he was surprised and concerned to see plaintiff using a cane because defendant had not authorized plaintiff to stop using the crutches. However, upon examination of plaintiff, defendant concluded that use of the cane had not had an adverse effect upon the healing of plaintiff's leg and that continued use of the cane was acceptable. Defendant also noted a ⅜" difference in the lengths of plaintiff's legs and advised him to see a "good shoe man." In recording the February visit defendant wrote "p.r.n." which he deciphered as meaning "patient to return as necessary."

Plaintiff continued to work until May, 1975 when he reinjured his leg while at work. Radiographs taken of the leg revealed that the leg had refractured and the metal pin previously inserted had broken. Defendant scheduled plaintiff for surgery to repair the broken femur. In this operation the broken pin was removed and a new one inserted. Bone shavings were then packed around the fracture site to aid in the healing process. After discharge from the hospital plaintiff returned to defendant's office for follow-up care which continued until treatment was complete in June, 1976.

Plaintiff returned to work in December, 1975. He was only able to work on an intermittent basis however, due to the pain in his leg and was eventually laid off in October, 1976. Plaintiff testified he has worked as a janitor, salvaging parts, and driving a truck though none of these jobs pay as much as his job as a machinist. Plaintiff stated he is in continual discomfort, he cannot navigate stairs well and is in pain in any position other than sitting.

■ Plaintiff alleges in his first point on appeal that the trial court erred in refusing to permit plaintiff's experts to state whether, in their opinion, defendant's treatment of plaintiff constituted malpractice. Apparently plaintiff sought to elicit the experts' opinions on whether defendant's conduct conformed to the standard of skill expected of members of the profession in similar circumstances. See *Aiken v. Clary*, 396 S.W.2d 668, 674 (Mo.1965); *Miller v. Scholl*, 594 S.W.2d 324, 329 (Mo.App.1980). As phrased, however, the question sought to elicit a conclusion of law from the witnesses and therefore the witnesses' answers were properly excluded. *Mann v. Grim-Smith Hospital and Clinic*, 347 Mo. 348, 147 S.W.2d 606, 608 (1941).

Plaintiff contends in his second point that the verdict is against the weight of the evidence and that the evidence is so contradictory and inconsistent that the jury verdict must necessarily be the result of passion and prejudice.

■ Plaintiff's complaint that the verdict is against the weight of the evidence preserves nothing for review. *Hartley v. Matejka*, 585 S.W.2d 240, 241 (Mo.App.1979). The jury is the sole judge of the weight to be assigned the evidence, *David v. Fiske*, 578 S.W.2d 328, 331 (Mo.App.1979), and it is for the trial court and not this court to determine whether the jury's verdict is against the weight of the evidence. *Hartley v. Matejka, supra*, 241.

■ Plaintiff's allegation that evidentiary conflicts necessarily resulted in a verdict inspired by passion and prejudice is not supported by any evidence. Furthermore the jury is the body traditionally assigned the task of resolving conflicts in the evidence, a task for which it is particularly suited. *Miller v. Ranson & Co.*, 407 S.W.2d 48, 53 (Mo.App.1966). Plaintiff's second point is devoid of merit.

■ Plaintiff contends in his third point that the trial court erred in failing to grant plaintiff a new trial against defendant St. Louis Orthopedic Institute, Inc. because that defendant admitted liability for defendant Wayne's conduct. The record is contrary. There is no admission of liability by the corporate defendant. In any event, as plaintiff conceded in oral argument of this cause, defendant corporation could not be held liable unless defendant Wayne was found liable. *See Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 595 (Mo.App.1977). We affirm the verdict and judgment in defendant Wayne's favor thereby rendering the question of defendant corporation's liability moot.

Judgment affirmed.

GUNN and SIMON, JJ., concur.