Jerry ROSE, Plaintiff–Appellant,

v.

TRI–STATE MOTOR TRANSIT CO., INC., Defendant–Respondent.

No. 15396.

Missouri Court of Appeals, Southern District, Division Two.

May 10, 1988.

Paul C. Taylor, Webb City, for plaintiff-appellant.

Thomas V. Bender, Albert Thomson, Kansas City, for defendant-respondent.

FLANIGAN, Judge.

Plaintiff-appellant Jerry Rose brought this action against defendant-respondent Tri–State Motor Transit Co. to recover damages in excess of $235,000 for breach of contract. A jury found the issues in favor of defendant. Rose appeals.

Rose's sole point is that the trial court erred in overruling his objection to a question asked by Tri–State's attorney, Albert Thomson, during his cross-examination of Rose's witness Cleo Allen, the president of a bank in Webb City. Before that trial incident is set forth, it is necessary to outline the factual background.

On July 18, 1985, the parties entered into a written agreement providing for the lease to Tri–State of a "1981 Freightliner tractor" truck owned by Rose. Among the provisions of the agreement were the following: "This Contract shall be in effect for a period of one year from date and thereafter shall be renewable on an annual basis; but [Rose] or [Tri–State] may cancel this Contract on ten days notice if the other party violates the terms of this Contract.... [Rose] is operating as an independent contractor and will pay all costs of operation of the [truck], including salaries and expenses of the drivers...."

In December 1984 Rose borrowed $37,-000 from the bank in Webb City and gave a mortgage on the truck as security for the note which called for monthly payments of $1,284.75. The first payment was due on January 15, 1985, but Rose did not make that payment until February 4. By August, although seven payments had been due, Rose had made only four payments. In August the bank and Rose "restructured" the loan. The last payment made by Rose prior to the restructuring was made on May 13, 1985. Rose never made a payment on the new note which, in the restructuring, replaced his original note. In December 1985 the bank repossessed the truck, sold it for $20,000, and credited the proceeds to the balance of the loan.

In October 1985 Tri–State sent Rose a "ten-day cancellation notice" informing him that Tri–State was cancelling the truck lease on November 8, 1985. Tri–State's evidence showed that prior to the sending of the cancellation notice Rose had failed to pay the wages of one McMorris who drove the leased truck as an employee of Rose. Prior to cancelling the lease, Tri–State had received several telephone calls from McMorris who complained of the fact that Rose had not paid his wages. Although Rose admitted paying $300 to McMorris after McMorris had lodged his complaints with Tri–State, Rose claimed that he did not owe McMorris and that Tri–State coerced the $300 payment.

Rose's petition alleged that Rose had fully performed the agreement and that Tri–State had breached it by sending the cancellation notice. In addition to the $300 "coerced payment," Rose sought $68,333.45 for loss of revenue "for the remainder of the 37 weeks left on [the agreement]," $1,295 for "forced deadhead due to lease cancellation," $15,283.14 for "loss of truck which was foreclosed by [the bank] to which [Rose] has been charged with a deficiency debt," and $150,000 for "loss of future earnings for truck which has been lost due to foreclosure."

Tri–State's answer admitted execution of the written agreement and admitted that it sent Rose the cancellation notice. The an-

swer also alleged that Tri–State cancelled the agreement because Rose "failed, after numerous requests so to do, to pay his employee Curtis McMorris the wages which were due him, and this failure by [Rose] constituted a violation of [the agreement] and gave [Tri–State] the right to cancel the agreement." The answer denied the other allegations of the petition.

Rose's sole point on appeal is that the trial court erred in overruling his counsel's objection to the following question which was asked by Tri–State's counsel during his cross-examination of banker Allen:

"Q. And by August—was the note by August of 1985, was the note in default?"

Rose's counsel objected to the question on the ground that it sought to elicit irrelevant and immaterial testimony. Rose's brief in this court states: "Any evidence pertaining to [Rose's] loan with the bank could not conceivably be relevant to the cancellation of the lease."

Rose also contends that the trial court's ruling on the objection "had the effect of causing a jury verdict which was against the weight of the evidence." This contention has no merit.

"Whether a jury verdict is against the weight of the evidence is a question for the trial court alone.... 'The statement that the verdict is against the greater weight of the credible evidence presents nothing for review because appellate courts do not weigh the evidence in a case tried before a jury.' ..." (Citing authorities.)

*Herrman Lumber Company v. Cox*, 521 S.W.2d 4, 5 (Mo.App.1975). To similar effect see *Roberts v. Wayne*, 624 S.W.2d 523, 525[2] (Mo.App.1981); *Hartley v. Matejka*, 585 S.W.2d 240, 241[3] (Mo.App.1979).

The challenged question sought to elicit the fact that in August 1985 Rose's note was in default. Prior questioning, to which no objection was made, makes it clear that the note referred to was Rose's first note, the one executed in December 1984.

Rose's trial theory, to which he adheres in this court, was that he had not failed to pay McMorris, that Tri–State thus had no

right to cancel the agreement, that the bank's subsequent foreclosure on the truck was caused by Tri–State's improper cancellation, and that his recoverable damages include those occasioned by the foreclosure. More specifically, his theory is that the bank's foreclosure was not prompted by Rose's delinquencies with respect to the note payments which were due prior to Tri–State's cancellation of the lease.

Tri–State, on the other hand, argues with considerable persuasiveness that Rose's delinquencies with respect to the note payments, including the delinquencies antedating the lease cancellation, were relevant to the issue of whether the bank's foreclosure was caused by Tri–State's cancellation of the lease.

For several independent reasons Rose's point has no merit. Rose's counsel, by his conduct at the trial, made the history of the note payments a live issue, whether or not it otherwise might have been.

During voir dire examination Rose's counsel told the veniremen: "There will be some discussion with regard to a default on a bank loan by [Rose]."

During his opening statement Rose's counsel said: *"As a result of the termination of the [Tri–State] lease, [Rose] was unable to make payments to a bank that had loaned him money to purchase the truck.... As a result of the lease being terminated [Rose] was forced to turn his truck back in to the bank, and subsequently the truck was sold.... The bank was not contemplating taking any sort of action against Mr. Rose with regard to his indebtedness prior to the time they received notification that Tri–State had terminated not only the insurance but also his lease.... My client didn't violate the terms of the lease. He didn't owe the driver the money. But as a result of their termination he not only lost his livelihood, he ended up as a result owing a bank an additional amount of $15,000."* (Emphasis added.)

Rose testified, on direct examination, that before he received Tri–State's notice

terminating the lease "the bank had never taken any action against me regarding the loan." He testified about the restructuring of the loan. He said that he talked to witness Allen from time to time between December 1984 and the date of restructuring and that he talked to Allen frequently after restructuring and prior to Rose's receipt of the cancellation notice.

The challenged question, posed by Tri–State's counsel to banker Allen, was never explicitly answered. Moreover, Tri–State's Exhibit A, introduced into evidence *without objection,* was a "transaction history card," which was, according to witness Allen, "identical with the original record of the bank." Exhibit A contains a complete history of Rose's payments on the first note.

During Rose's redirect examination of banker Allen, the witness testified that he was responsible for the management of Rose's loan and was the one to decide whether or not to call the note due. The following then occurred:

"Q. (By Rose's counsel): Prior to receiving the notice of the termination of the lease around November 1st of 1985, did you have any intention of calling that note due?

A. *Well, I recognized it as a troubled credit, yes.* But, I mean, as long as it was on the road I had hopes or anticipation of collecting the payments." (Emphasis added.)

The foregoing testimony indicates, or so the jury could reasonably infer, that Rose's delinquencies with respect to his first note caused the witness to regard it "as a troubled credit" and influenced his decision to foreclose.

"The complaining party cannot be prejudiced by the allegedly inadmissible evidence if that party offers evidence to the same effect as the challenged evidence, ... or if the challenged evidence is merely cumulative to other admitted evidence of like tenor." *Dunn v. St. Louis–San Francisco Ry. Co.,* 621 S.W.2d 245, 252[7] (Mo. banc 1981). See also *Drining v. Missouri Bone & Joint Clinic,* 730 S.W.2d 293, 295[3] (Mo.App.1987).

The challenged question was never explicitly answered. The information it sought was contained in Exhibit A to which Rose posed no objection, and that information dealt with matters which Rose's counsel had mentioned on voir dire examination and in his opening statement and which Rose had discussed in his direct testimony. Rose's counsel presented testimony of the type sought by the challenged question. For the foregoing reasons, Rose's point has no merit.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.