The MEDICAL PROTECTIVE
COMPANY, Plaintiff,

v.

Fletcher BELL, Defendant.

No. 86–0569–CV–W–1.

United States District Court,
W.D. Missouri, W.D.

May 10, 1989.

Roger Geary, Shook, Hardy & Bacon, Kansas City, Mo., for plaintiff.

John Hansen and Robert Kroenert of Morrison, Hecker, Kansas City, Mo., for defendant.

## ORDER

WHIPPLE, District Judge.

This action for declaratory judgment has been submitted for resolution on the briefs as agreed by the parties. The parties filed their stipulation of facts on December 18, 1987. Plaintiff filed its trial brief on January 20, 1988. Defendant filed his trial brief on February 22, 1988. Plaintiff filed a reply brief on March 18, 1988. By letter dated August 17, 1988, defendant's counsel alerted the court to a recently decided case. Plaintiff's counsel responded to the letter in a letter dated September 7, 1988. On November 23, 1988, the court heard oral argument from the parties. For the reasons set forth below, the declaratory judgment sought by plaintiff will be entered in favor of plaintiff and against the defendant.

### I. *Statement of the Case*

The plaintiff insurance company sued the defendant, who is administrator of the Kansas Health Care Stabilization Fund, to be indemnified for funds paid in excess of the coverage limits on two doctors. Specifically, the plaintiff wants to recover $515,000 paid in settlement of a medical malpractice suit against two doctors and the professional corporation that employed them. Plaintiff alleges that the professional corporation's liability is purely vicarious and, thus, the corporation is entitled to indemnity from the employee doctors. As the insurer for the corporation, plaintiff is attempting to subrogate the indemnity claim. The plaintiff paid $200,000 under the policies it issued to the two doctors ($100,000 limit for each).

Plaintiff claims that any money paid beyond the policy limit should be paid by the fund, which is the excess carrier for the doctors, rather than under the professional corporation's policy. Defendant responds that the three policies issued to the two doctors and the corporation all apply before the fund's excess coverage would be payable. Defendant argues that the policies' coverage was not exhausted by the settlement, so no excess coverage was payable.

This case presents an intriguing combination of questions concerning choice of laws, contract construction, statutory construction, contract law, tort law, and insurance law. In reaching its conclusions, the court has been aided by exceptionally well-pre-

pared briefs from both parties. This court's conclusions, in short, are: (1) Missouri law applies here except where Kansas law will be used to construe Kansas statutes. (2) The professional corporation's liability is vicarious, so it is entitled to indemnity from its employee doctors. (3) The plaintiff, as the corporation's insurer, may subrogate the indemnity claim and thus obtain reimbursement directly from the fund.

## II. *Statement of Facts*

The plaintiff is incorporated in its principal place of business, Indiana, and is authorized to conduct insurance business in Missouri and Kansas. The defendant is the Kansas commissioner of insurance and as such is the administrator of the Kansas Health Care Stabilization Fund. The fund was created by the Kansas Health Care Provider Insurance Availability Act, Kan. Stat.Ann. § 40–3401 *et seq.* Andrew B. Kaufman, M.D., and Robert A. Morantz, M.D., are physicians licensed by the Missouri and Kansas Boards of Healing Arts. Both physicians resided in Kansas but were employed in Missouri by Arnold Schoolman, M.D., Ph.D., a Missouri professional corporation.

Under the Kansas statute, a health care provider who resides in Kansas carries insurance for at least $100,000 per occurrence. The Kansas fund then pays any amount of a judgment or settlement in excess of the basic $100,000 coverage, even if the alleged incidents occurred outside Kansas. However, if any liability insurance in excess of the $100,000 amount is applicable to any claim, or would be applicable in the absence of the Kansas fund, "payments from the fund shall be excess over such amounts paid, payable, or that would have been payable in the absence of" the fund. Kan.Stat.Ann. § 40–3408.

Plaintiff issued separate policies of professional liability insurance to Drs. Kaufman and Morantz, each limited to $100,000 per occurrence. Plaintiff also issued a separate policy to the corporation, limited to $1,000,000 per occurrence. The three policies were in force during the relevant time. Also at that time, Drs. Kaufman and Morantz were Kansas resident health care providers within the meaning of the Kansas Act.

A civil action, styled *Allen v. Morantz, et al.*, was filed on July 20, 1983, in Jackson County, Missouri, Circuit Court, wherein damages were sought from Drs. Kaufman and Morantz, and from the Schoolman corporation. Essentially the petition alleged medical malpractice concerning services rendered in Missouri by the two doctors within the course and scope of their employment by the Schoolman corporation.

On March 31, 1986, Gerald D. Ediger, territorial manager for plaintiff's law department, discussed the *Allen* case with Derenda J. Mitchell of the Kansas fund. Ediger demanded that the fund assume responsibility for all amounts sought from Drs. Kaufman and Morantz which exceeded the limits of the policies issued to them by plaintiff. Mitchell responded that the fund would pay only the excess over the combined limits for the three policies issued to Drs. Kaufman and Morantz and to the Schoolman corporation. The discussion was memorialized in a letter dated April 1, 1986, from Ediger to Mitchell.

Having been informed of the fund's intention not to contribute until the three policy limits were exhausted, plaintiff herein negotiated and entered a settlement of all claims against plaintiff's insureds (Kaufman, Morantz, and Schoolman corporation) on March 31, 1986. Plaintiff herein agreed to pay $715,000 under the coverage of the three policies. The amount includes the limit of $100,000 from each of the two doctors' coverage, and the remaining $515,000 from the coverage of the corporation. The Kansas fund was not a party to the negotiations or to the settlement.

The plaintiff herein did not obtain the consent or agreement of the fund that the settlement payment would not be a waiver of any claim of the plaintiff against the fund. The release signed by the *Allen* plaintiff said Medical Protective, by tendering payment of sums in excess of the two doctors' insurance limits, was not assuming "volunteer status."

On March 31, 1986, plaintiff filed its original petition for declaratory judgment against defendant in Jackson County, Missouri, Circuit Court. The action was removed here by defendant Bell on May 2, 1986.

On April 11, 1986, the plaintiff herein paid $200,000 directly to the *Allen* case plaintiff and deposited the remaining $515,000 with the court administrator of Jackson County Circuit Court. On April 11, 1986, the circuit court directed the circuit court clerk to pay that amount to the *Allen* plaintiff.

The plaintiff herein is not seeking reimbursement and recovery from the fund for the $200,000 paid under the policies issued to Drs. Morantz and Kaufman. Rather, the plaintiff seeks reimbursement for the $515,000 paid pursuant to the policy issued to the Schoolman corporation. The fund has refused to provide coverage and/or indemnification for the $515,000, which is the amount by which payment exceeded the limit of coverage of the two doctors.

The fund has no independent knowledge upon which to ascertain the reasonableness of the *Allen* settlement amount. However, the fund does not contest the reasonableness of the amount.

### III. *Discussion*

### A. Parties' Arguments

### 1. *Plaintiff's Argument*

The plaintiff's argument takes several steps to reach its conclusion that it is entitled to reimbursement of the settlement amount paid on behalf of the Schoolman corporation. To begin, plaintiff urges application of Missouri law which, plaintiff argues, supports its approach to the flow of liability and to the duty to pay. First, if the corporation is vicariously liable, then the corporation would pay damages exceeding the primarily liable physicians' coverage. Second, if the corporation pays, then it would be entitled to indemnity from its primarily liable employee physicians. Third, if the corporation is entitled to indemnity, then the physicians would reimburse the corporation. Fourth, if the physicians' insurance coverage is exhausted,

the excess insurance carrier (the Kansas fund) would reimburse the corporation.

Plaintiff asserts that, as the corporation's insurer, it may subrogate the corporation's indemnity claim. If the plaintiff can subrogate, then the primarily liable physicians would reimburse the plaintiff for amounts paid by plaintiff on behalf of its insured corporation. If the physicians' basic coverage is exhausted, then the excess insurance carrier would reimburse the plaintiff.

### 2. *Defendant's Argument*

Defendant relies upon alternative theories, based upon his belief that Kansas law controls. First, the corporation is directly, not vicariously, liable for damages. If the corporation is directly liable, then it is not entitled to indemnity from the employee physicians. If the corporation cannot be indemnified, then the physicians' excess insurance would not apply and the corporation's own insurer (plaintiff) would pay the damages. Furthermore, the corporation is not covered by the Kansas statute, so the defendant would not be liable for excess coverage even if the corporation's basic coverage were exhausted.

Second, if the corporation is vicariously liable, then plaintiff still would pay the damages under the terms of its policy because plaintiff agreed to pay for vicarious liability. Further, even if the corporation were entitled to indemnity against the employee physicians, the plaintiff could not subrogate the corporation's indemnity claim. Plaintiff could not subrogate because the physicians also were insured by plaintiff and, defendant argues, an insurer cannot subrogate against its own insureds.

Third, even if the corporation were not required to pay damages on its direct or vicarious liability, defendant still would not be obligated to pay damages. That is, if the corporation paid a claim it was not required to pay, then the payment was voluntary and, as such, need not be reimbursed by defendant.

Fourth, even if the line of responsibility does reach the defendant, it need not pay because (a) defendant did not participate in

the settlement negotiations, or (b) the court has no jurisdiction over defendant to enforce payment, or (c) the Kansas statute does not permit such a payment, or (d) to construe the statute to require such a payment would achieve an unfair or absurd result which could not have been intended by the Kansas legislature.

### B. Choice of Laws

The analysis must begin with where Missouri law applies and where Kansas law applies. It is significant that the underlying acts occurred in Missouri, involving physicians practicing medicine in Missouri, employed by a Missouri corporation, all of whom were insured first under policies written to protect against risk in Missouri. Also it is significant that the physicians (but not the Missouri corporation) are subject to Kansas statute regarding the fund, the fund was created by Kansas statute, the fund's rights, duties and obligations arise from Kansas statute, and Kansas courts have construed the Kansas statute.

■ The conflict-of-laws rules of the forum state control which substantive law should apply. *Jump v. Goldenhersh,* 619 F.2d 11, 13 (8th Cir.1980). A federal district court sitting in Missouri is bound to follow the choice-of-law rules of Missouri. *Ryder Truck Rental, Inc. v. U.S. Fidelity and Guar. Co.,* 527 F.Supp. 666, 670 (E.D. Mo.1981). Therefore, Missouri rules control the choice of laws.

In *Kennedy v. Dixon,* 439 S.W.2d 173, 184 (Mo.1969), the Missouri Supreme Court adopted the "most significant relationship" test set forth in the *Restatement (Second) on Conflicts of Law,* § 145 to ascertain choice of law. Section 145 provides:

1. The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties and the principal stated in § 6.
2. Contacts to be taken into account in applying the principals of § 6 to determine a law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, is centered. These contacts ought to be evaluated according to the relative importance with respect to that particular issue.

Section 6 provides:

(1) The court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and relevant interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of the result, and (g) ease in the determination and application of the law to be applied.

Applying this test, there can be no doubt Missouri law controls the underlying tort action. All the significant contacts are in Missouri: Place of injury, conduct causing injury, place of incorporation, place of business, center of relationship. The only Section 145 item which is not in Missouri is the physicians' domicile, but the place of residence is not significant to the underlying tort action here. Consequently, Missouri tort law controls the chain of liability for the predicate personal injury claim.

■ In regard to contract questions, the *Restatement (Second)* also applies. *Havenfield Corporation v. H & R Block,* 509 F.2d 1263, 1267 (8th Cir.), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). In *Ryder Truck Rental Inc. v. U.S. Fidelity and Guar. Co., supra,* at 671, the court relied upon Sections 193 and 188 to determine the choice of law in a declaratory judgment action on liability insurance contract issues. Section 188 provides that in the absence of an effective

choice of law by the parties, issues concerning the rights and duties under a contract are determined by the local law of the state which has the most significant relationship to the transaction of the parties under the principles stated in Section 6. The principles in Section 188 can be applied to Section 193, according to Comment a, Section 193. Section 193 expressly applies to "contracts of fire, surety or casualty insurance" and provides:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understand was to be the principal location of the insured risk during the term of the policy, unless with respect to the significant issue, some other state has a more significant relationship under the principals stated in § 6 to the transaction of the parties, in which event the local law of the other state will be applied.

In Comment c, § 193, the *Restatement* further explains that the law of the state of the "principal location of the insured risk" should apply because "the state where the risk will be principally located during the term of a policy has a natural interest in the determination of issues arising under the insurance contract."

There appears to be no dispute, at least regarding plaintiff's coverage of the two physicians and corporation, that the principal location of insured risk is Missouri. The physicians were providing services in Missouri while employed by a Missouri corporation, so the law of Missouri should govern insurance contract issues here in regard to plaintiff's coverage of the physicians and corporation.

■ Missouri law also applies to the fund's coverage, even though the fund is created and operated by Kansas statute. Certainly, the fund's rights and duties arise from a Kansas statute, rather than from a traditional insurance contract. Yet, the fund effectively is an excess insurance carrier, by providing coverage in excess of the basic limits required and administered by the commissioner of insurance. *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, 631 P.2d 222, 226 (Kan.1981). The statute required resident health care providers to carry approved basic coverage of $100,000, while undertaking to pay the excess for a judgment or settlement. The provision for paying the excess is not limited to claims arising in Kansas. Section 40–3403(c)(1), Kan.Stat.Ann., provides:

> * * * [T]he fund shall be liable to pay: (1) Any amount due from a judgment or settlement which is in excess of the basic coverage liability of all liable resident health care providers or resident self-insurers for any personal injury or death arising out of the rendering of or the failure to render professional services *within or without [Kansas]*.

(emphasis added). Judgments or settlements in an outside state, obviously, would occur according to the laws of that outside state. If Missouri were the outside state, its laws of insurance would control. Certainly the Kansas legislature could not have presumed it had authority to change Missouri insurance contract law, even when the legislature was providing excess coverage for Missouri injuries. Missouri law applies to liability insurance issues here, regardless of whether the excess insurance is rooted in contract or statute.

Upon establishing the rights, duties and liabilities of the parties under applicable Missouri law, the effect of the Kansas statute must be examined. Just as the Kansas legislature cannot change Missouri law, a court sitting in Missouri cannot change Kansas statutes. Rather, application of Kansas statutes includes application of the Kansas case law construing those statutes. *See Osterholt v. St. Charles Drilling Co.*, 500 F.Supp. 529, 533 (E.D.Mo.1980) (federal district court sitting in Missouri interprets Illinois statute according to Illinois case law). Further, federal courts look to the decisions of the highest court of the state as the final authority on state law. *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 827 (8th Cir.1983). Therefore, when the operation of the Kansas statute enters the analysis of this matter, it must be as construed by Kansas courts.

## C. Vicarious Liability

█ The liability of the two physicians is not in question, so the analysis begins with the liability of the employer corporation. As noted above, plaintiff argues that the corporation's liability is purely vicarious. Defendant responds that the complaint in the underlying state tort action did not specify that the liability was vicarious, therefore the corporation is directly liable as a principal with the physicians. Alternatively, defendant argues that even if liability is vicarious, plaintiff must pay damages because its policy covered vicarious liability. Plaintiff replies that the complaint in the tort action did not specify that the liability was direct or vicarious, so no conclusion can be drawn on that basis.

Defendant's argument that the corporation is directly liable is untenable. As a fictional entity created and existing only in contemplation of law, a corporation cannot act through its own efforts. The only way corporations can act in the commission of wrong or otherwise is by and through their agents. *Perkins v. Missouri K. & T. R.R.*, 55 Mo. 201, 214 (1874) The sole manner in which such a legal entity could be liable in tort would be through some agent or employee. *Presley v. Central Terminal Co.*, 142 S.W.2d 799, 803 (Mo.App.1940). In *Presley, id.*, exoneration of an employee in an assault claim necessarily was exoneration of the corporation. In *Roberts v. Wayne*, 624 S.W.2d 523, 525 (Mo.App.1981), a health care corporation which was named in a medical malpractice action with a surgeon could not be found liable unless the surgeon was found liable. *See also, Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 595 (Mo.App.1977), wherein a defendant corporation could not be liable unless the its agent was found liable. There can be no doubt that any liability by the Schoolman corporation in the underlying tort action is vicarious, predicated solely upon liability of its agents/employees, the physicians.

Defendant relies heavily upon *McGuire v. Sifers*, 235 Kan. 368, 681 P.2d 1025, 1034 (1984), wherein a professional corporation was held liable with employee physicians for the physicians' negligence. Liability was found on theory of respondeat superior which, by definition, is vicarious liability. The court apparently was relying upon the Kansas legislature's awareness of respondeat superior, as illustrated by its statement at 1034:

> If the legislature had intended to abrogate the doctrine of respondeat superior as to professional corporations, it could have done so through the enactment of specific and definitive legislation. But, it did not do this.

(Curiously, the legislature later enacted Kan.Stat.Ann § 40–3403(h) (Supp.1986), eliminating vicarious liability for the actions of health care providers. Section 40–3403(h) also provides it "shall apply to all claims filed on or after the effective date of this act.") Although interesting, *McGuire* is not controlling on the vicarious liability issue because (1) Missouri law applies here and (2) the Schoolman corporation (a Missouri resident) is not a resident health care provider within the ambit of the Kansas statute. In any event, the case is consistent with the finding here that the Schoolman corporation is vicariously liable under the terms of the underlying tort action and settlement of it.

## D. Indemnity

█ Defendant argues that the Schoolman corporation (and, hence, the plaintiff insurer of Schoolman) is not entitled to indemnity from the employee/physicians. He argues that the Kansas statute does not provide for such indemnity payments, and that a decision to that effect would be a result which is unreasonable and unintended by the Kansas legislature. He further argues that finding an indemnity right effectively would afford more protection to nonresident health care providers than to Kansas resident health care providers. Finally, defendant argues that a premium was paid to plaintiff to provide coverage for vicarious liability, and plaintiff should be held to that obligation.

As stated above, Missouri law applies to the indemnity issue. Missouri law provides that where an agent acting within the scope of his employment subjects his princi-

pal to liability because of a negligent act, the agent is liable to the principal for the resulting loss in the form of damages paid by the principal to a third person. *See, State ex rel. Algiere v. Russell,* 359 Mo. 800, 223 S.W.2d 481, 483 (Mo.1949). In *Russell,* the Missouri Supreme Court stated that:

> Unless he has been authorized to act in the manner in which he acts, the agent who subjects his principal to liability because of a negligent or other wrongful act is himself subject to liability to the principal for the loss which results therefrom. This includes the payment of damages by the principal to the third person, or of a fine to the State in case of a crime. Thus, the servant who, while acting within the scope of his employment, negligently injures a third person, although personally liable to such person, is also subject to liability to the principal if the principal is thereby required to pay damages.

*Id.,* 223 S.W.2d at 483, quoting *Restatement of Agency* § 401, Comment c. In other words, a corporation which pays damages to a third person who was injured by a corporate employee is entitled to indemnity from the employee. Perhaps it is interesting, although not relevant, that Kansas has the same doctrine. *See Fenly v. Revell,* 170 Kan. 705, 228 P.2d 905, 907–908 (1951), citing numerous cases and treatises on that point.

Defendant's first argument is simply incorrect because, under Missouri (and Kansas) law, a principal may claim indemnity from its agent. Second, the provisions of the Kansas statute are not relevant at this stage in the analysis because, as stated above, Missouri law is applied first to determine the path of liability. After the path of liability is plotted, the source of coverage for that liability can be examined. Third, even if finding indemnity for a Missouri corporation would be an unintended advantage to nonresident corporations, that

is a consequence which should have been foreseen when the Kansas legislature provided for excess coverage for out-of-state torts.[1] Certainly the legislature did not believe that, by passing the statute, it could change the history, policies, statutes and case law of tort liability in other states.

Finally, defendant's argument about plaintiff's obligation cannot stand. The statute imposes upon the fund an obligation to pay excess claims, in return for the requirement that doctors carry their own basic coverage (under Section 40–3402) and pay into the fund for excess coverage (under Section 40–3404). The fund, under the statute, is no less obligated to honor its excess coverage than the plaintiff is obligated to honor its vicarious liability coverage.

### E. Subrogation

■ The right, if any, of subrogation probably is the linchpin of this case. Even if there were no dispute about the issues discussed above, plaintiff could not prevail if it could not subrogate the Schoolman corporation's rights of indemnity against the employee/physicians—who also were insured by plaintiff. Defendant argues that an insurer cannot subrogate against its own insureds.

In support of its argument, defendant relies upon the Kansas statute and various cases. The statute, as suggested above, will be set aside for now until the chain of liability under Missouri law is resolved. The cases, on the other hand, will be examined because of their persuasive policy reasons to prevent an insurer from subrogating against its own insureds. Defendant quotes *Couch on Insurance* 2d § 61:133:

> No right of subrogation can arise in favor of the insurer against its own insured, since by definition subrogation arises only with respect to the rights of the insured against third parties to whom the insurer owes no duty.

---

**1.** Indeed, with the subsequent statutory elimination of respondeat superior in Kansas, a Kansas health-care provider would have an unfair advantage over the nonresident provider if defendant's theory would be used. Defendant would preclude indemnity for a nonresident corporation on its vicarious liability for Kansas health-care providers' acts, even while Kansas professional corporations would be exempt from liability for Kansas health-care providers' acts.

Defendant also relies upon *Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1502 (11th Cir.1983); *Stetina v. State Farm Mutual Auto Ins. Co.*, 196 Neb. 441, 243 N.W.2d 341, 346 (1976) and *Moring v. State Farm Mut. Auto Ins. Co.*, 426 So.2d 810, 812 (Ala.1982). Most similar to the facts at hand, however, is *Continental Casualty Co. v. Empire Gas Co.*, 713 P.2d 384 (Colo.App.1984)[2] where the insurer issued separate policies of professional liability insurance to a doctor and to his professional corporation. After a medical malpractice action against the doctor and the professional corporation had been settled, the insurer asserted that all insurance coverage of the doctor had to be exhausted before any coverage available to the professional corporation could be reached. The court, at 394, rejected the insurer's argument that it should be subrogated to the corporation's right of indemnity against the physician employee. The court said, at 394:

> To allow subrogation under such circumstances would allow an insurer, in effect, to pass the incidence of the loss, either partially or totally, from itself to its own insured, and thus avoid the coverage which its insured purchased.

*See also, Home Ins. Co. v. Pinski Bros. Inc.*, 160 Mont. 219, 500 P.2d 945, 949 (1972). In other words, the insured would receive no protection in exchange for his premium because it still would be liable to his insurer for payments on claims.

The court in *Pinski Bros., supra* 500 P.2d at 949, presented an interesting survey of the mischief which could be caused by permitting an insurer to subrogate against its own insured:

> Such action, if permitted, would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.

The court further noted, at 949, that subrogation is an equitable principle and, accordingly, certain equitable principles apply in determining subrogation rights: (1) One who seeks equity must do equity. (2) One who seeks equity must come into court with clean hands. (3) No one can take advantage of his own wrong. Subrogation, as a principle of equity, also was examined in *Fenly v. Revell, supra*, 228 P.2d at 910: "[L]egal subrogation does not depend upon contract or assignment but follows as the legal consequence of the acts and relationship of the parties."

Surprisingly, however, the foregoing discussion compels a conclusion that plaintiff is entitled to subrogate in the peculiar circumstances presented here. The significant facts are (1) plaintiff undertook to pay $100,000 per occurrence for each of the two doctors, (2) plaintiff paid $100,000 for each of the two doctors, (3) by doing so, plaintiff discharged its obligation—for which premiums were paid—to the two doctors, (4) plaintiff is not seeking reimbursement for the $200,000 but, rather, the $515,000 paid for the Schoolman corporation's vicarious liability.

In light of the legal consequence of those acts, and the relationship of the parties, the two doctors effectively became third parties relative to the plaintiff for purposes of this action. The doctors effectively became third parties because plaintiff no longer

---

**2.** Only dubious efficacy can be attributed to the *Continental Casualty* case. It was overruled on November 28, 1988, in *Lininger v. Eisenbaum*, 764 P.2d 1202, 1210 (Colo.1988). The Colorado Supreme Court held that there was no cause of action for wrongful life, which was the gravamen of *Continental Casualty*. The court said *Continental Casualty* was overruled only to the extent that it was inconsistent with the later decision. Technically, perhaps, the subrogation holding thereby was left intact. However, having overruled *Continental Casualty* on the preliminary matter of whether a cause of action existed, there would be no need to consider if rights in such an action could be subrogated.

owed a duty to them. The effect was the same as if some insurer other than plaintiff had paid on the basic coverage, and plaintiff was proceeding against unrelated third parties. By subrogating the Schoolman corporation's indemnity right, plaintiff would not be evading its obligation to the employee doctors. Rather, plaintiff is merely exercising its subrogation rights under the Schoolman corporation policy.

Interestingly, this view is consistent with a recent Kansas Supreme Court case. In *Western Motor Co., Inc. v. Koehn*, 242 Kan. 402, 748 P.2d 851, 853 (1988), the court reviewed the general rule against subrogating against one's own insured. The court then said, 748 P.2d at 853:

> Therefore, to determine whether an insurer is barred from claiming a right of subrogation against a particular person, the insurance contract must be examined to determine whether it was the intention of the parties to include the person within the scope of the policy's coverage.

In the case at hand, examination of the insurance contracts reveals the scope of the policies' basic coverage for the doctors was limited to $100,000 each. Therefore, upon paying the limits of coverage, plaintiff was not precluded from claiming a right of subrogation against the doctors for the amounts exceeding those limits.

Significantly, this result is consistent with the purpose of the rule that precludes an insurer from subrogating against its own insureds. As stated above, subrogation is a principle of equity. In this instance, plaintiff has done equity by paying on the doctors' coverage. The plaintiff has come with clean hands, and does not seek to take advantage of its own wrong. More important, however, none of the mischief described in *Pinski Bros., supra*, would occur. The insurer would not be securing a judgment on the risk which it insured against (it already paid on that risk). There would be no breach of the doctors' policies (plaintiff already performed). Information obtained from the doctors is not being used to get a judgment against them. The insurer would not be taking advantage of its conduct and conflict of interest with

the doctors (the conduct fulfilled plaintiff's duty, so the conflict was extinguished.) There was no breach for which judicial approval would be obtained.

In equity, the doctors should (and did) receive the full limits of coverage on their policies while retaining responsibility for indemnifying their employer. The plaintiff should be (and was) obligated to pay the full coverage on the doctors, while retaining the right to subrogate the Schoolman corporation's right to indemnity on its vicarious liability. The fund, as an excess carrier, should be liable for the excess coverage due from its insureds (the doctors) to whomever (the corporation and hence the plaintiff) the excess coverage is due.

Support for this finding can be found in *Commercial Union v. Chubb Group of Ins. Cos.*, 194 N.J.Super. 69, 476 A.2d 290, 296 (N.J.Super.Ct.App.Div.1984), Brody, J. dissenting, majority opinion reversed, 101 N.J. 24, 499 A.2d 1362 (N.J.1985) (adopting reasoning of Brody dissent). The facts in that case are remarkably similar to the facts here. In the opinion which was adopted by the New Jersey Supreme Court, Judge Brody said, 476 A.2d at 296–297:

> * * * Where one liability policy covers an employee for his own negligence and another covers his employer for the same negligence, the employee's policy must first be exhausted before the employer's carrier may be called upon to pay. This reflects the common-law rule that a negligent employee must indemnify his employer whose liability is only vicarious. *Maryland Cas. Co. v. N.J. Mfrs. & c., Ins. Co.*, 48 *N.J.Super.* 314, 327–328, 137 A.2d 577 (App.Div.1958), aff'd 28 *N.J.* 17, 145 A.2d 15 (1958). Here that indemnification is implemented by a clause in the corporation policy wherein Chubb is "subrogated to all the insured's rights of recovery against any person...."
>
> In my view if Chubb had paid the injured party in response to the corporation's vicarious liability coverage, it would be entitled to indemnification from Commercial for so much of the payment as exceeded the doctor's basic malpractice coverage under Chubb's individual

policy. To avoid a "circuity of action," the Chubb policy covering the doctor individually for malpractice and Commercial's excess policy which expands his individual malpractice coverage must pay the injured party before the Chubb corporation policy is called upon to pay for the corporation's vicarious liability. *See Maryland Cas. Co. v. N.J. Mfrs. & c., Ins. Co., supra*, at 328, 137 A.2d 577.

\* \* \* \*

The Kansas City Court of Appeals also considered the rule precluding subrogation against one's own insured, and held the rule did not apply where subrogation was brought against a co-insurer rather than the insured. In *State Farm Mut. Auto. Ins. Co. v. Central Sur. and Ins. Corp.*, 405 S.W.2d 530 (Mo.App.1966), plaintiff and defendant both had written coverage. Defendant refused to defend its insured, and asserted it was liable only for any excess above plaintiff's coverage of insured. Plaintiff filed suit against the co-insurer defendant to obtain pro rata reimbursement, after paying the full settlement amount. The court said, at 535:

The facts in this case are very similar to those in *Liberty Mutual Ins. Co. v. Standard Accident Ins. Co.* (U.S.D.C.S. D.N.Y.), 164 F.Supp. 261 [1958]. In that case both plaintiff and defendant had issued policies to the same insured. Each policy contained similar clauses concerning "other insurance" and "subrogation". That is also true in the instant case. On pages 263 and 264, the court said:

" \* \* \* The amount paid in settlement fixes the amount of the loss which the co-insurers must share. True the amount paid must be reasonable, cf. *Royal Indem. Co. v. American Cas. Co.*, 5 Misc.2d 533, 159 N.Y.S.2d 45, but the fact that the payment was less than the judgment is prima facie proof of its reasonableness. Plaintiff by virtue of its payment and under the terms of the subrogation clause, was subrogated to all rights which the insured would have against defendant. If the insured had made the settlement and the payment after the defendant's disclaimer of cover-

age, defendant would have been liable to the insured for its share of the settlement payment. Defendant is similarly liable to plaintiff under the terms of the subrogation clause. This conclusion is in accord with *Commercial Standard Ins. Co. v. American Emp. Ins. Co.*, 6 Cir., 209 F.2d 60. See also *United States Guarantee Co. v. Liberty Mut. Ins. Cas.*, 244 Wis. 317, 12 N.W.2d 59, 150 A.L.R. 632; *Detroit Auto. Inter–Ins. Exchange v. Detroit Mut. Auto Ins. Co.*, 337 Mich. 50, 59 N.W.2d 80."

In *United States Guarantee v. Liberty Mut. Ins. Co.*, 244 Wis. 317, 12 N.W.2d 59, 150 A.L.R. 632, 636, the court said:

" \* \* \* The plaintiff by and under its contract with assured agreed 'to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages \* \* \*'. In paying the damages to Gaurkee it performed the terms of its contract with the assured, as the defendant had breached and violated its contract for a like liability. By the terms of its policy plaintiff was subrogated to the rights of the assured which, under the decisions, is a substitution of one person in the place of another with reference to a lawful claim or right. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by one who in good conscience ought to pay it. *Leonard v. Bottomley*, 1933, 210 Wis. 411, 245 N.W. 849; *Northern Assurance Co., Ltd. v. [City of] Milwaukee*, 1938, 227 Wis. 124, 277 N.W. 149. If assured had made settlement with Gaurkee and was the plaintiff in this action, defendant would be liable for the amount now claimed. By payment of the entire amount, plaintiff is substituted in place of the assured with reference to a lawful claim or right. When defendant violated the contract by refusing to defend the Gaurkee action, a settlement by plaintiff and payment of the full damages did not make plaintiff a volunteer or interloper as to the payment

for which this defendant is liable. * * * "

In *State ex rel. McCubbin v. McMillian,* (Mo.App.), 349 S.W.2d 453, 1. c. 459 and 460, and 461, the court reached the same result as is stated in the above decisions.

Consider the obvious similarity to the case at hand. Plaintiff was obligated to coverage of $100,000 on each of the doctors, and the defendant's fund was obligated to pay the excess. That is, the fund was, "in effect, an 'excess' insurance carrier, providing coverage in excess of the basic required limits administered by the Commissioner of Insurance...." *Stephens v. Snyder Clinic Ass'n,* 230 Kan. 115, 631 P.2d 222, 226 (1981). So, plaintiff and defendant effectively were co-insurers of the doctors. If the doctors had been compelled to indemnify the Schoolman corporation for payments on its vicarious liability, the fund would have been required to pay amounts exceeding $100,000 for each of the doctors. Rather than engage in a "circuity of action," plaintiff brought this action directly against the co-insurer. The plaintiff seeks reimbursement of that to which the Schoolman corporation is entitled by indemnity, that is, the amount of the settlement in excess of the doctors' basic coverage. Under *State Farm Mut. Auto. Ins. Co. v. Central Sur. and Ins. Corp., supra,* plaintiff may bring such an action by subrogating the Schoolman corporation's claim for indemnity against the doctors.

### F. Kansas Statute

■ Upon determining the flow of liability under Missouri law, the provisions of the Kansas Health Care Provider Insurance Availability Act (Kan.Stat.Ann. §§ 40–3401 *et seq.*) must be examined. During the relevant period, the fund required a professional liability insurance policy to be maintained by "each resident health care provider as a condition of rendering professional services...." Kan.Stat.Ann. § 40–3402(a). The requirement was that the policy be approved by the defendant, issued by a

duly authorized insurer, and cover at least $100,000 per occurrence. *Id.*[3] The definition of a "health care provider" includes certain persons licensed by the Kansas State Board of Health Arts to practice certain of the healing arts. Kan.Stat.Ann. § 40–3401(f). The parties stipulated that Drs. Kaufman and Morantz were resident health care providers under the statute. Of course, Schoolman, a Missouri corporation, is not a Kansas resident.

Under Section 40–3403(c), the fund

* * * shall be liable to pay (1) any amount due from a judgment or settlement which is in excess of the basic coverage liability of all liable resident health care providers or resident self-insurers for any personal injury or death arising out of the rendering of or the failure to render professional services within or without [Kansas]; (2) ... in no event shall the Fund be obligated for claims against nonresident health care providers or non resident self-insurers who have not complied with this act or for claims against nonresident health care providers or non-resident self-insurers that arose outside of [Kansas].

The terms of the statute demonstrate that the fund would be liable for the excess claims against the resident doctors, but not the Schoolman corporation. However, defendant relies heavily upon another statutory provision. He states that Section 40–3408 specifically prohibits payment by the fund in this situation. Section 40–3408 provides:

The insurer of a health care provider covered by the fund or self-insurer shall be liable only for the first $200,000 [previously $100,000] of a claim for personal injury or death arising out of the rendering of or the failure to render professional services by such health care provider, subject to an annual aggregate of $600,-000 for all such claims against the health care provider. *However, if any liability insurance in excess of such amounts is applicable to any claim or would be applicable in the absence of this act, any payments from the fund shall be*

---

**3.** Currently the statute provides that a health care provider must carry coverage of at least $200,000 per occurrence. Kan.Stat.Ann. § 40–3402(a) (Supp.1985).

*excess over such amounts paid, payable or that would have been payable in the absence of this act.* * * *

(emphasis added by defendant).

Contrary to defendant's argument, the terms of Section 40–3408 do not preclude payment of the excess here. As discussed above, the liability must be allocated according to Missouri law. Also as discussed above, the Schoolman corporation is entitled to indemnity under Missouri law. Such entitlement exists under Missouri law regardless of whether the Kansas statute exists. Therefore, even in the absence of the act, the Schoolman corporation would be entitled to indemnity. Even in the absence of the act, the primarily liable doctors would be liable for reimbursement to the corporation (or its insurer, by subrogation). When the basic coverage was exhausted, the corporation (or its insurer, by subrogation) may call upon the excess carrier to pay the excess. In this instance, the excess carrier is the Kansas fund.

Defendant argues that the fund need not pay because the vicarious liability coverage for the corporation is "applicable." However, this argument overlooks the fact that the doctors are primarily liable, and the corporation is only secondarily liable. The corporation's coverage applies only if there is insufficient coverage for the doctors. In this instance, there is sufficient coverage. The basic coverage provided by plaintiff provides the first $200,000 toward satisfying the settlement. Then the excess carrier (the fund) would provide the excess.

The plaintiff would be required to pay on the corporation's vicarious liability only if (1) the limit of the excess coverage is reached or (2) the excess carrier did not fulfill its obligation to pay an excess claim. As revealed by the discussion above, the excess carrier for the primarily liable doctors is required under Missouri law to pay toward the settlement before the vicariously liable corporation. By statute, the fund undertakes to provide such excess coverage for Kansas resident health care providers on claims arising outside Kansas. Because the Kansas statute could not presume to change Missouri law of liability,

the excess coverage for the primarily liable doctors is payable before the vicarious liability coverage is payable. Therefore, the vicarious liability coverage for the corporation is not "applicable" before the fund's excess coverage.

The statute defines "applicability" in terms of "the absence of the statute." That is, the statute looks to what coverage would apply if the statute, and hence the fund, did not exist. At first glance, it might appear that without the statute and the fund, plaintiff would pay under its vicarious liability coverage of the corporation because the doctors would have no excess coverage. However, as stated above, the doctors would be liable to indemnify the plaintiff for payments made on behalf of the corporation. This would be so even in the absence of the statute. Conceivably, the doctors might be compelled to reimburse the plaintiff from their own assets for payments made on behalf of the corporation. Therefore, the vicarious liability coverage for the corporation is not "applicable." Because that coverage is not applicable, the statute does not preclude payment of excess coverage.

Indeed, the statute, in Section § 40–3403(c), requires payment of excess claims for resident health care providers. That requirement is just as clear as the prohibition against paying claims against nonresident health care providers, such as the Schoolman corporation. Therefore, it is important to recognize that the fund's obligation is to the doctors, not the corporation, even though the corporation (and its insurer, the plaintiff) benefits indirectly.

Defendant argues that this result would be an absurd result that could not have been intended by the Kansas legislature because it is more advantageous to Missouri professional corporations than to Kansas corporations. This argument fails for four reasons. First, Missouri law, not the Kansas statute, establishes the liability of the excess carrier. Second, the advantage to the professional corporation is merely an incidental (although substantial) consequence of the fund fulfilling its obligation to its insureds, the doctors. Third,

the statute requiring payment of excess claims for residents is just as forceful as the statute prohibiting payment of claims against nonresidents. Fourth, the same result would occur if the resident doctors did not work for a professional corporation in any state; that is, the excess would be paid regardless of whether any corporation could benefit indirectly.

As an interesting sidelight, the result here apparently would not be an absurd or unintended application of Kansas statute. Shortly after defendant's main case, *McGuire v. Sifers, supra*, was decided, the legislature specifically eliminated respondeat superior liability for health care providers. That change would reverse the result in *McGuire*, and would achieve the same benefit for Kansas professional corporations as for those of Missouri, i.e., neither would be liable. So, if Schoolman were a Kansas corporation, it would be treated the same under the new statute as it will be treated in this case.

### G. Miscellaneous Arguments

#### 1. Solo Settlement and Voluntary Payment

■ Defendant argues that the fund is not obligated to pay part of a settlement which he did not negotiate. The facts are, however, that the plaintiff called upon its co-insurer, the fund, to defend its excess coverage position and pay on the excess claim. The defendant refused, so he cannot now be heard to avoid contribution to the settlement on the grounds that he did not participate in negotiating it. Indeed, the defendant has stipulated that he has no basis for doubting the reasonableness of the settlement.

■ Likewise, defendant argues that plaintiff's payment was voluntary, despite what defendant calls a "self-serving" disclaimer in the settlement agreement. The agreement recites that the payment was not voluntary. The plaintiff contended at the outset that its co-insurer, the fund, was liable. Upon the fund's refusal to pay, plaintiff proceeded to settle the litigation and pay the claim. There is no indication that, by paying the claim, plaintiff intended to waive its action against the defendant.

Actually, its dealings with the defendant demonstrate the contrary. Under such circumstances, the payment was not voluntary and it is reimbursable. *See, United Services Auto. Ass'n v. United States Fidelity and Guar. Co.*, 555 S.W.2d 38, 44 (Mo.App.1977).

#### 2. Contract Construction of Kansas Act

Defendant argues that, contrary to plaintiff's assertion, the Kansas statutes concerning the fund should not be treated like a private insurance contract. To that extent defendant is correct. The statutes are not a contract, even though they create and regulate a proprietary activity, i.e., insurance. As discussed above, they are Kansas statutes and, as such, should be construed as statutes according to the decisions of Kansas courts. The argument is moot, however, because the path of liability under Missouri law leads to excess coverage by the fund before the analysis turns to construction of the Kansas statutes.

#### 3. Personal Jurisdiction

Defendant argues that this court has no personal jurisdiction over him. The contention was examined at length and rejected in an opinion issued by the late Honorable Ross T. Roberts, United States District Judge, on November 3, 1986. The matter need not be reexamined here.

#### 4. Direct Action Against Fund

■ Defendant argues that payment by the fund is precluded by Section 40–3412. That provision prohibits direct action by a claimant against the fund. In this instance, plaintiff is not a claimant. Rather, plaintiff is a co-insurer seeking reimbursement of some proceeds it paid to the claimant. The claimant, of course, was the plaintiff in the underlying tort action. This lawsuit is not limited by Section 40–3412 because it is not a direct action by a claimant against the fund.

#### 5. Plaintiff's Obligations

Defendant argues that plaintiff is obligated for the full amount of coverage for

which it drew premiums from its insureds. He relies upon *Missouri Medical Ins. Co. v. Wong,* 234 Kan. 811, 676 P.2d 113, 122 (1984), where the court found the basic insurance carrier liable for the full $1,000,000 of coverage it had written. In this instance, the plaintiff was obligated to a limit of $100,000 per doctor on the basic coverage, and plaintiff paid that obligation. If the limit of basic coverage had been $1,000,000, as it was in *Wong,* then the fund would not be liable on its excess coverage of the doctors until that higher limit was exhausted. However, the lower $100,000 limit was exhausted in this case and, at that point, the excess coverage was payable. Contrary to defendant's argument, the $1,000,000 vicarious liability coverage of the Schoolman corporation is irrelevant until both the basic coverage and excess coverage on the primarily liable doctors are exhausted.

Another problem with defendant's argument is that, under the Kansas statute, the fund also has an obligation to its insureds. The fund's statutory obligation to its insureds is just as forceful as the plaintiff's contractual obligation to its insureds. The fund's obligation under its excess coverage of primarily liable insureds is just as forceful as plaintiff's obligation under its basic coverage of primarily liable insured. The fund's obligation also is just as forceful as plaintiff's obligation under its coverage for vicarious liability. The difference, as examined above, is the order in which the obligations are aligned. Here, the fund's obligation to pay under vicarious liability coverage arises only after the fund fulfills its obligation to pay under excess coverage of the doctors.

## VI. *Conclusion*

In addition to the foregoing discussion, several considerations support a finding in favor of plaintiff here. First, it provides for equal treatment of Missouri and Kansas professional corporations. That is, any vicarious liability attributable to them would be payable only after the fund's excess coverage of primarily liable employees is exhausted. (Of course, Kansas professional corporations currently have no re-

spondeat superior liability for acts of health care providers.)

Second, this ruling gives the plaintiff the benefit of its bargain by obligating it to pay on vicarious liability only after exhaustion of excess coverage of the primarily liable employees. Logic commands that the decision to purchase a $100,000 limit on basic coverage for the doctors—the same as required by the Kansas statute—was more than happenstance. If the fund were not required to pay under the excess coverage of the doctors, the plaintiff likely would have considered that (perhaps requiring additional basic coverage for the doctors) when it wrote the vicarious liability coverage for the corporation. The Missouri insurance coverage of a Missouri corporation for risk in Missouri would anticipate application of Missouri law concerning liability, indemnity and subrogation. This ruling applies Missouri law in those areas, thus giving plaintiff the benefit of its bargain.

Third, this ruling also enforces the obligation which the Kansas legislature imposed on the fund by statute. Upon enacting the statute, the legislature required resident health care providers to meet certain conditions. In return for meeting those conditions, the statute required that excess coverage would be available to the health care providers. Thus, the health care providers (and, indirectly, their employer corporation's insurer) are receiving the benefit of the relationship imposed by Kansas statute.

It is

ORDERED that judgment shall be entered in favor of the plaintiff and against the defendant, such that the rights of the parties are declared to be in accordance with the findings of fact and conclusions of law contained in this order and, more specifically, the plaintiff is liable for only the first $200,000 of aggregate liability in the settlement of *Allen v. Morantz, et al.,* Case No. CV83–13845, and the plaintiff is entitled to full indemnification by the Kansas Health Care Stabilization Fund for amounts in excess of the first $200,000 of aggregate liability in settlement of the *Al-*

*len* case. In addition to the fund's reimbursement to the plaintiff, costs shall be borne by the defendant.